291 Madrid-Mancia v. Attorney General. Attorney Guntariuk? Good morning, your honors. May it please the court. The Hallmark of American Justice. Excuse me, did you reserve time for rebuttal? I did, your honor. How many minutes? Five minutes, your honor. Very well. Okay, thank you. The Hallmark of American Justice is notice and opportunity. That is the very definition of due process. As Justice Brennan once said, due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances. Due process is flexible and calls for procedural protections as the particular situation demands. And in this particular situation, we argue that the petitioner was not provided with adequate notice and opportunity to be heard before being deprived of her protected interests under either Paragraph 1 or Paragraph 2 of 1229A. Now, my adversary seems to be focused on another motion we filed with the BIA, which was done in a nature of reconsideration of their prior opinion. To address case law, they seem to have missed. But the issues at hand, which your honors so astutely pointed out, remain the same. The standard for rescission and to the extent which Renaud B. Lynch informs the meaning of the no-notice provision. Well, we also require notice to the BIA, right, to the agency about the issues that it's supposed to address. And in terms of exhaustion, where is that raised as to rescission versus termination? In our underlying PFR to this court, we raised the issue and we discussed the implications under Pereira and Ms. Chavez as to rescission of her removal order. My question is not as to this court, it's to the BIA. The BIA itself discusses the issues as to the mailing in their underlying decision and in their decision as to the motion to reopen, they discuss rescission under Ms. Chavez. Does that excuse you not raising it? Your honors, since we did raise it in our PFR, it is an issue at hand because we raised it in our PFR. This is something that is essential to the matter. They do discuss in their underlying dismissal of our appeal as to the BIA, the notice of appearance itself. They discuss the service of the notice of appearance in the underlying decision. Let me ask you separately, you seem to suggest that there needs to be a compliant notice to trigger any obligation to update addresses on your client's part. This seems like a legal chicken and egg. If there's a notice that at least includes the information, maybe not the time and date, but it includes the notice of the obligation to update an address, if we're not going to count that, how could that excuse for all time the non-citizen updating their address when they've actually received notice of that obligation? As to your question, your honor, the case in Brno, the First Circuit, addressed that point. In terms of their obligation, the statutory language and language on the actual NTA states that the petitioner is responsible to provide an address and any change of address. However, there is no definition of whether that address is a residential address or a mailing address. In this matter, Ms. Madrid-Mancia did provide a mailing address, which she continuously checked, and she received subsequent notice from ICE to that very address. That gets to a slightly different issue than I'm asking about. I'm trying to understand how practically your argument would work. If the deficient notice to appear at the outset excuses the obligation to update at an address, how would it be that the government could then ever give proper notice if there's not going to be updating of an address by a non-citizen? Your honor, that's a great question. The First Circuit in La Parra spoke to that question. The fact that Congress chose to use the disjunctive or in section 1229B5A and 1229B5C provides no basis for us to disregard Pereira's construction of 1229A2 itself, nor does the reading of 1229A2 Pereira requires to strip the word, or the government can plainly reissue a new notice of appearance with the required time and date. But we and other courts have recognized that there's a difference between a deficient notice to appear and the absence of a notice to appear. At least with a deficient notice to appear, there's still jurisdiction. Why don't we extrapolate from that to say, okay, there's at least a valid notice of the obligation to update? There is a valid notice of the obligation to update. However, the language is not clear in terms of that obligation and whether or not it's to update a residential address or a mailing address, your honor. The court in La Parra stated that we don't have to disregard the fact that the NTA is deficient or whether there's a subsequent new written notice. The issue with the second paragraph is that the second paragraph specifically speaks to a change or postponement of the time or place of the initial hearing date. Where the initial hearing date was not provided on the notice of appearance, then the second paragraph cannot be fulfilled. When you look to the guidance from the Supreme Court in Pereira and Ms. Chavez, it tells you exactly what the definition of the second paragraph is. And they speak as to a change or postponement of the proceedings to a new time and place. And therefore, the La Parra court and two other circuits, the NTA, and the Fifth Circuit rightfully agreed and applied this definition. They even analyzed Acosta Gomez in their holding that the use of or in the statute indicates only one form of notices required to render an in absentia removal lawful and stated bluntly that it does not matter whether Congress chose to use the disjunctive because we cannot possibly disregard the Pereira construction of 1229-A2 either way. Those opinions are founded, are they not, on the premise that once a defective notice to appear issues, then there can never be a valid notice of hearing? Because of the construction, absolutely, Your Honor. Because of the construction of Pereira, unless there is a change or postponement of a time, date, or place. Well, why isn't... I mean, we now know after Pereira and Ms. Chavez that the typical notice to appear, as I understand it, that would be sent out with a to be determined date. Is that right? That would be the typical NTA, right? Okay. Not all NTAs are sent out with a time or a date to be set. There are many NTAs that include a time or place, especially following the decision in Pereira, Your Honor. Okay. All right. Well, that's good to hear. But prior to Pereira, isn't it true that many NTAs were sent out without a fixed date and time to appear? Your Honor, I'm not sure as to many, but I would be happy to do some research and issue a supplemental brief on that, on the statistics. Well, at least in this case, right? Yes. In this case, absolutely. All right. So what did the NTA say in... What did Ms. Madrid-Mancia's NTA say? It said that there was a time or place to be set. To be set. Okay. And then there's a notice of hearing with a date and time that's fixed. So why is that not a change? Isn't that different or a change from to be set? Well, the Lepar Court did address that very question, Your Honor, and they stated clearly... I'm not asking you what Lepar said. I'm asking you, pretend there are no cases out there. I'm asking you to help me with the language of the statute. And I'm asking, is a notice of hearing with a fixed date and time a change from a notice to appear that says on a date and time to be set? No, it's not, Your Honor. It's not a change. It's the same thing. It's not a change because there is no initial time and place to be set. And you cannot change something from nothing. Okay. To be clear, there has been, as to your client, there never was a corrected notice to appear that was served on her. Is that right? Correct, Your Honor. Correct, Your Honor. There was never any service of the subsequent notice to appear that would have cured the deficiency of her original personally served NTA. In Lepara, they specifically speak to... I don't know if you can see the light, but your initial time's expired. So we'll hear you on rebuttal, okay? Okay. Thank you. Attorney Shuchard? Yes. Good morning, Your Honor. It's Spencer Shuchard for the Attorney General. May it please the Court. Our position on jurisdiction, I'll just reiterate it briefly, is that the petitioner never validly raised the rescission issue, and she has not preserved the no-notice issue. So the issue here... Essentially, there's no real issue for review. That said, I understand Your Honors want to hear about both the mandatory rescission issue and the no-notice issue. And our position on that is that this case can be decided entirely on the no-notice issue, regardless of whether or not Your Honors decide to dismiss or deny or even grant the petition for review. And here's how that works. Judge Krause, you actually anticipated my argument here. Because it's settled in this circuit and every circuit to address the issue that even a defective notice to appear gives an immigration judge jurisdiction. That means he has authority to act. And one of the things he has authority to do is to remove a non-citizen in absentia. The prerequisite for in absentia removal is notice, notice under A1 or A2. And that's really the crux of the mandatory rescission argument, right, is that no valid notice under A1, so you can't remove. But here there's an exception. B-5B tells us that no notice is required if the non-citizen hasn't required with their duties under A1F, which essentially moots the notice argument. We're not looking at notice anymore because no notice is required. And this makes sense because B-5B doesn't mention notices to appear at all. So saying that an immigration judge doesn't have authority to issue an in absentia removal order because of a defective notice to appear would be the same thing as saying that he doesn't have another name. Judges have authority to act. He can't make a finding that the stop time rule has triggered. But that doesn't matter. I guess I understand the argument. It's a clever argument. But we don't say that simply because there's jurisdiction that that takes care of the merits of a case as well, right? We need to look to what it is that the IJ or BIA is purporting to do. And when we have the Supreme Court telling us in two recent cases that a defective notice to appear is in essence not a notice to appear at all and that the notice of hearing therefore can't function as a notice of hearing, how are we to reconcile that with the outcome that you're asking us to reach? So the Supreme Court, I would argue, actually hasn't said that that broadly. The Supreme Court has been very clear, especially in Pereira, that what it's talking about is a defective notice to appear's ability to trigger the stop time rule. The stop time rule doesn't care about notice of hearing. It doesn't need a notice of hearing at all. Arguably, that's what Ms. Chavez is about. It's telling us that a notice of hearing, no matter how validly issued, can never trigger the stop time rule because these documents are distinct. So when Pereira is purporting to construe 1229A2, which is the notice of hearing statute, that's essentially dicta. In fact, it is dicta because it wasn't necessary to the outcome in Pereira. Justice Sotomayor was responding to a rhetorical argument essentially by the government and by the dissent when she decided that the word change ought to be construed narrowly in terms of meaning moving from something, a definite thing to another definite thing, which is not the most common definition of change. Most people, I would think, when they think of the word change, they think of the most common definition, which is to make or become different. And there's no reason in the text of that statute itself that would argue against that. And because it's dicta, I can say that the reasoning is poor. It's actually circular. Why is it really dicta? Why isn't that just anticipating the issue that came up in Nick Chavez, where they're taking a look at the possibility that a notice of hearing would somehow be a cure, but looking at the notice of hearing as a threshold matter, it doesn't function as a notice of hearing because there was never the reasoning of the court if there's never a valid notice to appear, then the date and time being provided in this document later can't function to be a cure because it doesn't even qualify as a notice of hearing. If, as I think is a possible reading of what they're doing in that part of Pereira, why would that be dicta? I'm not saying it's an impossible reading. Obviously, Lepar de Leon has read it that way, and so did the Ninth Circuit and Sink. But the argument is that it isn't necessary to the outcome. You could have deleted those two paragraphs and come to the same conclusion that Pereira did. And it's important to keep in mind that Pereira tells us that it's narrow, that it's just talking about stop time. Stop time rule doesn't reference 1229A2. The same thing happens in Nick Chavez when Nick Chavez purports to construe that provision. It's telling us it's just that it supports these documents are meant to be complete and distinct. Well, it comes up in the context of the stop time rule, but isn't the whole thing really about what satisfies notice to the non-citizen? Why isn't that generalized? Why can't that be generalized to this context as well? Pereira isn't about notice at all, arguably, Your Honor. Pereira is about the validity of a document because the stop time rule doesn't care about notice in any sense. What it cares about is that a mechanical trigger has sprung. Notice to appear does function as a notice document, yes, but it also has other functions within the INA. One of them is to trigger the stop time rule, and you can tell that notice is not a function there because a notice to appear doesn't have to contain a warning saying that the stop time rule has now been triggered. It doesn't care about that part of it, and reciprocally, the stop time rule doesn't care about notice itself. It just cares that there's now a document that's been served. And so when we're talking about notice, and you can actually see this from the text of the statute. This is something that Acosta-Gomez, the 11th Circuit, gets right, is that you want to start from the text and work your way forward because the rescission statute of B-5-2-C has to be read in context with the penitential removal statute of B-5-A. Those are functionally identical provisions. They're mirror images of each other with the only difference being between being who has the burden of proof. So the government under B-5-A can remove a non-citizen if it proves that they or at least Nick Chavez just serve a valid notice to appear. The government didn't need to serve a valid notice to appear because it had jurisdiction already, and it took forever at its word by saying that it was narrowly construing the stop time rule, which is not an issue here. Petitioner didn't seek cancellation of removal. She didn't seek anything, actually, because she never showed up for a hearing. And that's kind of the crux here. If you read the rescission statute to say that a petitioner only has to show either A-1 or A-2, regardless of its relevance to the actual hearing that she missed, you're backwards converting the government's burden under B-5-A to show that it delivered the required notice under both A-1 and A-2. It always has to have a valid NTA and a valid notice of hearing, or else it can't remove. And that's not what the statute says. Reading the statute the way Lepar de Leon does converts that or that disjunctive or into an and. And that's just not consistent with the statute. Tecosta-Gomez is right here. And the most elegant way, I think, to read these statutes together is to point out that the notice has to be notice of the hearing that she missed. If she can show that she didn't get notice for the hearing that she missed, then she can get rescission. Now, that obviously doesn't matter here because petitioner wasn't entitled to notice at all. Could you unpack that last argument a bit, counsel? Why wasn't she entitled to notice at all? Because she didn't provide, she didn't comply with her statutory duties under A-1-F. Where does that come from, that statutory duty? 1229-A-1-F-2-IN. Right. And what does that say? It says that she has to provide notice immediately to update the court about her change in address. It says a change of the alien's address or telephone number. You don't read that as connected to F-I. It says that the alien must immediately provide or have provided written notice of an address or telephone number where they may be contacted. You look at those as separate requirements? No, I think they're the same requirement. I think one... Okay, well, then where Madrid did provide, I thought from the alien may be contacted. And that did... She did. Right, okay, but it didn't change. It was her contention. No, she's actually never made that contention. Below, her argument was that she had done enough, even though she had moved, her address had changed. But her argument was that she had done enough to essentially ensure that we could believe her that she had rebutted the presumption of delivery. Right, but it's not... The statute, as I'm reading F-I, doesn't say your address. It says an address or telephone and telephone number, if any, at which you may be contacted. Then F-I-I says, if that thing changes, you have to let us know. And her argument is, it didn't change. I can still be contacted at that address. Respectfully, Your Honor, I don't think you should read her argument that way. She wasn't thinking in those terms. She was arguing that she had rebutted the presumption of delivery because she had made some arrangements by checking an address at which she never lived. That's not the same as saying she complied with her statutory... It doesn't, but just counsel, I want to get a good answer to this one. Where does F-I say a written record of where she lives? You've introduced that twice now. It says a written record of an address and telephone number where she may be contacted. And I would assume contacted is not necessarily where you live. I mean, I'll concede that I'm using where she lives as shorthand for what the statute says, but I think you should read the statute as saying not just an address where she may be contacted, but an address where she may be reliably contacted. Now, if you don't like the shorthand... Which might not be where she lives, I think, to Judge Mady's point. Right. It might be where her mother lives because she's moving, you know, on a month-to-month lease or something. I would assume she'd agree with that argument and say the most important, the most reliable place where I could be contacted was the address that I gave you, and that that's why I gave it to you. There's a lot of great arguments, Your Honor, than all of your honors, and she never made them. What she said was that I didn't live there, I didn't comply with my duties, that's implied. She knew she had the duty because she tried to change her address at the DHS and failed. So not only did she know she had the duty, she knew that she didn't comply with it. But she put it out to David saying that within every three days she was checking back with her cousin as to the mail that she received. So in terms of what we have on the record, didn't the address she provided constitute an address at which she could be contacted? No. And I think I can maybe answer that with a thought experiment. I know some of my neighbors. I have some goodwill on the street. If a letter were misaddressed to me and ended up there, there's a chance that I might get that mail. That doesn't mean that their address is mine. It doesn't mean that I have provided my address if I provided theirs. It's easy to contemplate plenty of scenarios in which you might get mail at an address that isn't yours. But the statute, I don't think, is meant to encompass good luck following a decision not to comply with your statutory duty. Is it the government's position that the right way to designate the address that is required under the statute is the EOIR-33? That is in our position. This hasn't been construed as far as I can tell about what exactly where a person should change their address. There obviously is the EOIR-33. And is that an official form for the change of address? Yes, and it's actually provided with a notice to appear. They come together as a packet. So what do we do with the fact that that form itself in setting out the boxes to be filled in for former address and current address has the first line as, quote, in care of other person, paren, if any, close paren. You do nothing with that, Your Honor, because this issue, the petitioner hasn't preserved this issue. She didn't make a notice argument until her supplemental brief. She didn't even make this argument to the board in either of her motions. So if, to the extent you wanted to construe the definition of the word address, this isn't the case to do it. She's essentially abandoned the idea that she hasn't complied because she has. I mean, I'm sorry, she's abandoned the hasn't. The only argument she made were about sufficiency of service. And again, under the no notice provision, she wasn't entitled to service. She wasn't entitled to notice. So it doesn't matter what efforts the agency made to try and reach her or the efforts that she made to try and get mail in an address that wasn't hers anymore. So that means it's irrelevant if the BIA did not apply the six MRA factors. We don't even get to that. We don't even get to that if we accept what you just argued, correct? That's correct, Judge, because that's about sufficiency of service. All right. But if we disagree with what you said previously, tell us how the BIA discharged its duty to evaluate the six MRA factors. And I'm particularly interested in the alien's due diligence and promptly seeking to redress the situation by obtaining counsel and requesting reopening of the proceedings after learning of the removal order, which MRA called a significant factor. The immigration judge addressed diligence by pointing out that the petitioner had waited years after she had moved to to move to reopen and pointed out that she had tried and failed to change her address, which implies that she knew that she had a duty to update her address and knew that she had failed. All of those are diligence findings, I would say. But I thought it was whether she was diligent after learning of the removal order. Isn't that the proper measuring stick? I think that's a measuring stick, but it doesn't have to be the only one. The MRA factors aren't necessarily dispositive. I think the sixth factor is any other relevant factor. There wasn't a lot to her motion to begin with. But it did seem like she got counsel within a month or two, didn't she, of the removal order? She got counsel within a month or two of learning of the removal order, which was actually years after the removal order was issued. Right. Well, but isn't, are you saying what matters isn't when she learned of the removal order, it's when the removal order was actually issued? In this case, yes, I would say so. I think that's a fair diligence finding here. But that puts the cart before the horse, because the whole point here is to ascertain whether the presumption of mailing has been rebutted. It's her burden to overcome the weak presumption of regular mail, right? And the way she does that is to come forward and say, look, I didn't get it. It's a hard hill to climb because of the presumption. But shouldn't this court under the Chenery Doctrine require the agency to articulate and evaluate the factors of the MRA factors in order to see whether she, in fact, rebutted the presumption of mailing? No, Your Honor, because the no-notice issue is dispositive. It really doesn't matter what she did, because she wasn't entitled to notice to begin with. But that gets back to where we started, which is if we accept your argument on that, we don't get to the MRA analysis I just took you through. But maybe I should take what you just said as a concession, that if we don't agree with your argument that she was not entitled to notice, that we have to remand the case for full consideration of the MRA factors. No, it's not a concession. The agency considered the MRA factors to the extent they were presented by the evidence. Okay. If you're looking at MRA factors, we're talking about substantial evidence, right? Which is whether or not the evidence compels the conclusion that the agency was wrong. You might not agree with its diligence finding, but were you compelled to say that it was wrong to find that she didn't have diligence? Well, just point to me, save us some time and point to us in the record where the agency considered the significant factor of due diligence upon her discovery that the in absentia order had been entered. Where does the agency address that? The agency's diligence, I did decisions only on one page, to pick 77. Yeah, so where in that page does it do that? Can you quote a sentence, a phrase, a paragraph, something? Instead of just telling us it's there, can you quote the language so we can home in on it? No, as such, it isn't there. It's an implied finding based on the judge's discussion of diligence in the context of the petitioners having done nothing for two years. Well, isn't it also implied that the IJ took the fact of her Should we infer that that also was considered as part of the diligence analysis? And if we disagree with that, that is, if we conclude that, given the language of the statute, it doesn't require the designation of a residential address, but a care of address was sufficient, how is it apparent that the judge considered that in the diligence determination? Well, I mean, again, you'd have to imply it from what he wrote. Again, the petitioner, we'll take a petitioner at her word, right? She moved twice. She knew she was supposed to update the agency and she didn't. Instead, she and her cousin check a mailbox at which it's not clear that she or her cousin actually lived anymore. It's fair to make a diligence finding, even an implied diligence finding right there, saying that you didn't do enough to get yourself in overcame the presumption of delivery. So you're making the same assumption that I'm suggesting seems to underlie the immigration judge's decision because you say that she knew that she had to give some other kind of notice of address. But if she went and attempted to give a different address, wasn't permitted to do that, and then instead made arrangements for a different location that she would diligently check as a contact address. Why? We've talked about whether that should be considered sufficient under the statute. Let's assume that it is for purposes of this question. If that was sufficient and she thus conducted herself as she understood the statute to be working, and the immigration judge didn't, on the face of the opinion, seem to consider that in the diligence analysis, then don't we need to send it back for consideration of that as one of the factors as well? If all of the preconditions that you mentioned to this question are true, which I don't concede, then yes, you would have to send it back for fact finding, which kind of brings me to a point I wanted to make. If you guys, if your honors can give me about 20 seconds here, I know that my time is long since up. Just to point out that the easiest way to dispose of this, if you don't like what the agency did, it's to send it back for fact finding either on the address issue or the presumption of delivery issue, although we don't think that that needs to happen. Don't need to reach the mandatory rescission issue because it's just not preserved. And with that, I think I can rest. Judge Mady has a question. Counselor, I just want to make sure I understand the limits of your argument. The government isn't contending that it can send no notice to appear under Section 1 and rely entirely on Section 2. Is that accurate? That's not accurate. You never need to send a notice to appear under Section 1. You can just rely on a notice of time or change of place under Section 2, and that satisfies the in-abstentia requirement. The notice to appear must be served to give an immigration judge jurisdiction to act, to Judge Krause's point. Once the judge has jurisdiction and authority, there never needs to be a correction of the notice to appear. And if the petitioner has not complied with their A1F statutory address requirements, they never actually have to send a notice of hearing. Now, they wouldn't know that. That's kind of an academic point because you're not going to know in advance that your address is stale. But there's a difference between what the agency does habitually, which is send notices of hearings, and what the agency is required to do statutorily. The Parer is actually pretty clear about that. Does that answer your question, Judge? It does. Thank you. Thank you. All right. Thank you, Mr. Shukart. Ms. Gontario. Thank you, Your Honors. To the point of Guadalupe, I apologize. It's Acosta-Gomez, and as to why it doesn't apply, the case is absolutely distinguishable. In Acosta-Gomez, the gentleman did receive at least one subsequent notice of a court date, affirmatively moved to change venue, and then didn't receive several subsequent notices. And therefore, it can't be applied in this case. It's completely different, as there was a change or postponement in both the place and the time. As to counsel's argument in terms of the address, the mailing address, counsel doesn't consider the chainery doctrine and the fact that the BIA didn't properly consider the factors of MRA. In the instant matter, Ms. Madrid-Mencia wasn't trying to evade. She was going to her ICE check-in. She received notice of her ICE check-in to that very address that she listed as her contact address where her cousins lived. She went to the ICE office, subsequently found out that she had a deportation order from the deportation officer, promptly hired counsel, and promptly filed a motion to reopen the matter. And that, for those reasons, the matter has to be remanded in order for the judge to consider the MRA factors, which weren't properly considered in the underlying decision. Well, is the remedy you're seeking simply a remand for reconsideration of the factors, or is it rescission? It's both, Your Honor. Assuming, arguendo, that Your Honors do not find that rescission is warranted in this matter, then a remand is proper in order to consider those MRA factors. And in order for us to grant you the relief of rescission, we simply have to hold that an invalid notice to appear automatically entitles your client, which I think everyone agrees that under Pereira and Ms. Chavez, the NTA that your client received was invalid. So that's baked in here. But your argument, as I understand it, is that rescission must occur whenever there's an invalid NTA. It must occur when there's an invalid NTA. There's no subsequent valid NTA that thereafter is served on the client. And there is no change or postponement thereafter. It's absolutely correct. And I believe that this court in Guadalupe, although that was a cancellation issue, they spoke as to you can't just provide a subsequent notice of hearing in an attempt to cure a defective NTA. Well, that's what the circuits are debating right now. And that's what have to weigh in on, right? Do you disagree with Mr. Schuchard's argument that the agency gets jurisdiction or got jurisdiction over your client when the NTA was handed to her, even though we all agree it's a defective NTA? No, a defective NTA is a defective NTA. That means it doesn't confer any notice or jurisdiction and it has to be reissued as a valid time with all the requirements. All right. Well, that really is very helpful. So, we've got to wrestle with this threshold issue of jurisdiction, whether the invalid NTA confers jurisdiction. What case law do you have to support that notion? I believe the language in terms of the jurisdiction, the defectiveness of the notice of appearance in Pereira and Nischavez is clear that the NTA as a whole is defective, but I would happily... Well, no. Remember, I said that's baked in, that it's defective. My question is, I heard you just argue, and correct me if I'm wrong, if I misheard it, but I heard you just say that the defective NTA, as adjudicated by Pereira and Nischavez, deprives the agency of jurisdiction. It's been a little bit of time since those cases were decided. So, I'm asking, is there any case law to support your argument? Well, the case law in terms of... That there's no jurisdiction. Has a court held after Pereira and Nischavez that the agency lacks jurisdiction over the alien when the NTA is defective for failing to state the time and place to appear? Your Honor, I am unaware of any case law, but I would be happy to file a supplemental brief on the issue. You don't actually... I mean, you don't need to make quite that argument, do you? I mean, do they have to go hand in hand, or is having jurisdiction over a matter of time or something distinct that even a defective NTA might be able to cause, but that defective NTA still not have certain other effects as designated by the Supreme Court? Absolutely, Your Honor, as to the notice provided to the respondent, or the petitioner in this case, in terms of defective NTA, whether it confers jurisdiction or not, in terms of notice, it does not provide the adequate notice needed under the requirements of the statute. Well, that's what Pereira and Nischavez tell us. You're quite right about that. But if there is a defective NTA is issued, what I'm puzzled by is why it would be important or even helpful for a new NTA to be issued rather than a clear notice of hearing telling the alien that... who already knows that she is in removal proceedings, that you need to appear for hearing on a certain date and a certain time. Why isn't that sufficient? Because what we're really concerned about here is that the alien get a notice consistent with due process, right? We are, but the notice has to be in one clear document and not several documents. Well, for purposes of the stop time rule, yes, but we don't know for other purposes, that's what we're here for, right? We argue that for other purposes as well, Your Honor. But I'm asking you, maybe this is a policy argument, but I'm asking you why it just seems to me to be an idle exercise to go through if there's jurisdiction. That's why I asked you about jurisdiction. If the agency has jurisdiction after the defective NTA, it seems like an idle exercise for courts to require, it would be idle for courts to require the agency to go back to the beginning and issue a new NTA rather than just issuing a crystal clear notice of hearing that tells the alien you better appear or else you might suffer an absentia removal order. Your Honor, as you may be aware, the courts are inundated. Sometimes they send notices of court dates months, years after an initial NTA is issued. Sometimes they send several notices. The judges change, the courts close for various reasons. It would be overly burdensome not to have that requirement fulfilled under the NTA. Okay. All right. Court thanks counsel for the arguments. We'll take the matter under advisement.